JOHN W. MURRELL *v.* R. H. DIXEY and H. C. DIXEY.

The common carrier owes indemnity to the shipper of goods for delay in the transportation, and legal interest upon the price of the goods during the period of the delay may be recovered, as the measure of such indemnity.

The shipper cannot recover, as damages, the premium paid by him for insurance upon the goods, while the vessel was lying in a port to which she was driven for repairs, by reason of her unseaworthiness. The carrier in such case becomes the insurer.

APPEAL from the Fourth District Court of New Orleans, *Price, J.*

*Benjamin, Bradford & Finney,* for plaintiff. *Durant & Hornor,* for defendants and appellants.

MERRICK, C. J. The defendants are sued as the captain and owners of the ship Plymouth. The plaintiff, having a contract with the French government, shipped on board of defendant's ship a quantity of naval lumber, consisting of masts, bowsprits, beams, deck plank, &c , from Mobile, Alabama, to Cherbourg, France. At the contract prices, the value of the lumber was $26,674.

The ship left Mobile harbor on her voyage, on the 18th day of October, 1856, at six o'clock P. M. At 8 o'clock, the ship had six inches water in the hold. The pumps were used during the night. At 12 o'clock M. the next day, the leak having greatly increased, it was determined to alter the course of the vessel and make for the port of New Orleans, where she arrived on the 22d of the same month, still leaking badly. On her arrival the usual proceedings were had, which resulted in an order that the cargo should be unladen, and the ship was ordered into dock as unseaworthy.

The cargo was reshipped on board the Trenton, at the cost of defendants. The latter ship sailed from New Orleans on the 18th day of February, and delivered her cargo at Cherbourg, where it was received, without objection, on the part of the French government.

This suit has been brought to recover damages occasioned by the delay and transhipment of the cargo, and the controversy is confined in this court to three items of damage allowed by the Judge *a quo.*

They are as follows, viz :

Premium paid for harbor risk, whilst the vessel lay at this port, $192 08.

Amount paid *Cazenave* for superintending cargo and forwarding same, $200.

And interest at five per cent. on $26,674, from 23d October, 1856, to 18th of February, 1857.

There has been some discussion of the question, whether the ship was seaworthy while she lay at the port of Mobile. The New Orleans witnesses are almost unanimous that the ship could not have been seaworthy at that time. The Mobile witnesses are equally positive that it was seaworthy.

The District Judge believed the New Orleans witnesses, and we cannot say that he erred.

The ship did not encounter any bad weather, and if she was not unseaworthy otherwise, she became so from her bad stowage.

It becomes necessary to consider the elements of damage controverted by the defendants and appellants.

I. As to the premium paid for the harbor risk. There is no reason to sup-

pose that defendants were aware of the unseaworthy condition of the ship, and they cannot be charged with bad faith.

On the arrival of the ship in the port of New Orleans, the plaintiff had the option of two modes of proceeding. 1st. To dissolve the contract of affreightment and resume possession of the cargo; or, secondly, to insist upon the contract and compel the defendant to deliver the cargo as he had agreed to do by his bill of lading.

The latter cause appears to have been adopted in this instance, as it is proved that the lumber was reladen on the Trenton without cost to plaintiff, under a contract made by the consignee (Captain Dixey) and agents of the Plymouth, and that the agent of the plaintiff made several demands upon the agent of the Plymouth, who complied with the same, but owing to high prices, not as soon as plaintiff's agent desired.

The consequence of this was, that the cargo whilst in the port of New Orleans, where it had arrived by reason of a deviation occasioned by the unseaworthiness of the vessel, was at the risk of *the defendants as insurers*. Angell on Car. secs. 175, 176, 177; Abbott, 340; Parson's Merc. Law, 348–351.

It does not, therefore, (in the absence of authorities) appear to us reasonable, that the defendants should be compelled to insure the cargo, and at the same time, be held responsible for such re-insurance (for in that light it ought to be viewed) as the plaintiff may be pleased to procure. Such damage, if it may be so called, being optional with plaintiff, whether he will incur it or not, seems too remote to be supposed that it entered into the consideration of the parties when the bill of lading was signed.

II. The preceding remarks apply with equal force to the $200 paid *Cazenave* by plaintiff, as his agent. By holding defendants to their contract, the cargo was in their charge, and as they employed and paid for the necessary agents and laborers in accomplishing the transhipment, they cannot be compelled to pay for any others.

III. Defendants contend that interest cannot be sued for, separate from the principal, and that timber does not produce the fruit known as interest, nor is the premium paid for the use of timber ever known by that name.

It appears to us that the common carrier must be held responsible for unnecessary delay in the delivery of the merchandise intrusted to him for transportation. The fact that the merchandise has not deteriorated during the interval, is not a sufficient answer to the holder of the bill of lading, who may, in the meantime, have experienced great inconvenience and loss.

In the case of *Rathbone* v. *Neal*, 4 An. 567, this court held, that " the carrier undertakes to transport the goods not only in good safety, *but within a reasonable time. She is bound to account for their value at the expiration of that time.* It is as much a part of his contract, as to deliver them in good condition, and in commercial adventures *time* is one of the elements upon which they are undertaken and controls their result. Nor do we think that the plaintiffs have lost their rights to recover from the defendants, for the delay in the delivery of the goods in consequence of having received them, and disposed of a portion of them at private sale."

In the case before us, there is no other proof of special damage than that resulting from the fact, that the plaintiff was delayed nearly four months by the act of defendants, in receiving $26,674 contracted to be paid him by the French government. The defendants, therefore, have occasioned the plaintiff damage,

equal to the amount of interest which he would have received on his money in that interval. This is not a remote damage, but one which may be supposed to have been contemplated by the parties. C. C. 1928, No. 1. The question of the increased charge for freight is reserved by the parties.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed; and we do now order, adjudge and decree, that the plaintiff recover and have judgment against the defendants *in solido*, for the sum of four hundred and thirty-three dollars and twenty-four cents, with a privilege upon the property attached, the plaintiff paying the cost of appeal, and the defendants those of the lower court.

VOORHIES, J., absent.